<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IAN M. HONAUER, | Civil No.: 19-cv-8947 (KSH) (CLW) |
| *Plaintiff*, | |
| v. | |
| NORTH JERSEY TRUCK CENTER and JOHN MUCHMORE, | **OPINION** |
| *Defendants*. | |

**Katharine S. Hayden, U.S.D.J.**

### I. Introduction

Plaintiff Ian M. Honauer has sued his former employer, New Jersey Truck Center, Inc. ("NJTC") and NJTC's president, John Muchmore ("Muchmore," and with NJTC, "defendants"), for disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. § 10:5-12(a), and for failure to advise him of his rights under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.* Defendants have moved to dismiss the federal claims under Fed. R. Civ. P. 12(b)(6), and argue that upon dismissal the Court should decline to exercise supplemental jurisdiction over the NJLAD claims. For the reasons set forth below, the Court grants the motion in part and denies it in part. Honauer will be permitted to file an amended complaint within 21 days.

### II. Background

According to the complaint, Honauer was hired by NJTC on September 6, 2016, as its used truck sales manager. (D.E. 1, Compl. ¶ 9.) He alleges his performance was excellent and that he was never subject to discipline. (*Id.* ¶¶ 11-12.) During a March 2018 vacation, he broke

1

his leg. (*Id.* ¶ 13.) On March 16, 2018, while still on vacation, Honauer informed Muchmore of the injury. (*Id.* ¶ 14.) Over the next days he underwent surgery and returned to the United States (*id.* ¶ 15); the order of events is not clear from the submissions.[1] The lengthy flight caused Honauer to develop blood clots. (*Id.*) Honauer updated Muchmore on March 19, 2018, after his leg surgery, and on March 21, 2018, updated him about the blood clots and his need for treatment of them. (*Id.* ¶¶ 16-17.)

Honauer, anxious to return to work, provided NJTC with a doctor's note clearing him to return March 26, 2018. (*Id.* ¶¶ 18, 20.) But Muchmore did not clear Honauer to return and told him he was required to take disability leave. (*Id.* ¶ 21.) He did not, however, tell Honauer of his rights under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.*, or provide him with the necessary paperwork. (*Id.* ¶ 22.)

On March 23, 2018, Muchmore initiated an investigation into purported deficiencies in Honauer's employment performance. (*Id.* ¶ 23.) Honauer characterizes the investigation as "baseless" and a pretextual effort to justify his unlawful termination due to his disabilities. (*Id.* ¶¶ 23, 27.) Nonetheless, Honauer cooperated with the investigation. (*Id.* ¶ 24.) NJTC terminated Honauer's employment via email on March 26, 2018. (*Id.* ¶ 25.)

Honauer filed a complaint with the Equal Employment Opportunity Commission on October 27, 2018, and received a right to sue letter on February 20, 2019. (*Id.* ¶¶ 28-29.) He filed this action on March 26, 2019. The six-count complaint asserts claims for (1) disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, (2) failure to accommodate and engage in the "interactive process" under the ADA, (3) disability

---

[1] The complaint suggests Honauer's surgery was done in India and that he flew home after the surgery, whereas his brief opposing defendants' motion to dismiss states the opposite.

discrimination in violation of the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. § 10:5-12(a), (4) failure to accommodate and engage in the "interactive process" under the NJLAD, (5) unlawful retaliation and wrongful termination under the NJLAD, and (6) violation of the FMLA.  Defendants have moved to dismiss the federal claims (counts 1, 2, and 6) under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, and further argue that upon dismissal of the federal claims, the Court should decline to exercise supplemental jurisdiction over the state law claims.  (D.E. 26-2, Defs.' Moving Br.; D.E. 28, Defs.' Reply Br.)  Honauer opposes dismissal.  (D.E. 27, Pl.'s Opp. Br.)[2]

### III.  Standard of Review

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Fed. R. Civ. P. 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  "'[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements'" are all disregarded.  *Id.* at 878-79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,' and a claim is facially plausible when the plaintiff "'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (citations omitted).

---

[2] Honauer's opposition brief refers to exhibits, but there were none filed with that brief. Presumably, the references are to the certification of counsel and exhibits (D.E. 9-1, Matias Cert.) filed with Honauer's opposition to defendants' original motion to dismiss, which was withdrawn without prejudice.  Although the Court will consider those previously filed exhibits as, and to the extent, appropriate under our local rules and the jurisprudence governing motions to dismiss under R. 12(b)(6), future submissions may be stricken if not properly filed.

Although the Court is generally confined to the allegations in the pleadings in ruling on a motion to dismiss under Rule 12(b)(6), it may, without converting the motion to one for summary judgment, consider documents "'integral to or explicitly relied upon in the complaint,'" as well as "'undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted); *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

### IV. Discussion

#### A. ADA Claims

The ADA prohibits covered entities from discriminating against qualified employees based on their disabilities. *Eshleman v. Patrick Indus.*, 961 F.3d 242, 245 (3d Cir. 2020); 42 U.S.C. § 12112(a). To state a claim under the statute, the plaintiff must show that he (1) is a disabled person within the meaning of the ADA, (2) is otherwise qualified to perform the job's essential functions, with or without reasonable accommodations by the employer, and (3) has suffered an otherwise adverse employment decision as a consequence of discrimination. *Eshleman*, 961 F.3d at 245 (citing *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). The motion to dismiss Honauer's ADA claims is based on the first two elements; specifically, defendants argue that he has not pleaded a qualifying disability and that he did not request any accommodation.

With respect to disability, a plaintiff is "disabled" under the ADA if he (A) has "a physical or mental impairment that substantially limits one or more major life activities," (B) has

4

a "record of such impairment," or (C) is "regarded" as having such an impairment.  42 U.S.C. § 12102(1).  Honauer contends that he had a physical impairment substantially limiting one or more major life activity; that is, he relies on the "actual disability" prong of the disability definition.[3]

The complaint alleges that Honauer experienced a broken leg, specifically a broken fibula and tibia, and blood clots, both of which qualify as physical impairments under the regulations implementing the ADA.  *See* 29 C.F.R. § 1630.2(h)(1) (physical impairment means "[a]ny physiological disorder or condition . . . affecting one or more body systems, such as . . . musculoskeletal, . . . [or] circulatory").  Defendants argue that because Honauer was cleared to return to work within ten days of his leg injury, he has insufficiently pleaded the remaining components of the "disability" element of his ADA claim, *i.e.*, substantial limitation of one or more major life activity.

Whether a person is substantially limited in a major life activity is a case-by-case determination.  *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 167 (3d Cir. 2015); *see also* 29 C.F.R. § 1630.2(j)(1)(iv) (requiring "individualized assessment").[4]  The standard is not intended to be a demanding one and "should not demand extensive analysis."  29 C.F.R. § 1630.2(i)(2), (j)(i), (j)(iii).  The regulations repeatedly emphasize the flexible approach to be taken in assessing whether a plaintiff has pleaded the existence of a disability.  *See, e.g.*, 29 C.F.R. § 1630.2(i)(2) (the term "major" "shall not be interpreted strictly to create a demanding

---

[3] Although the complaint references in passing the "regarded as" and "record of" prongs (¶¶ 36-37), in opposing dismissal of count 1 Honauer relies only on the actual disability prong. Accordingly, the Court construes count 1 as based on that prong.

[4] "Major life activities" include, among other activities, walking, standing, working, and the operation of major bodily functions, including functions of the circulatory and musculoskeletal systems.  42 U.S.C. § 12102(2)(A)-(B); 29 C.F.R. § 1630.2(i)(1).

5

standard for disability"); *id.* § 1630.2(j)(1)(i) ("The term 'substantially limits' shall be construed broadly in favor of expansive coverage . . . . 'Substantially limits' is not meant to be a demanding standard.").

An impairment qualifies as a disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population," and it need not prevent or significantly or severely restrict the individual from performing the major life activity. *Id.* § 1630.2(j)(1)(ii). The "condition under which the individual performs the major life activity; the manner in which the individual performs [it]; and/or the duration of time it takes the individual to perform [it]," all as compared to most people in the general population, may also be relevant to the determination. *Id.* § 1630.2(j)(4).

The impairment's short duration does not necessarily disqualify it from being "substantially limiting." *Id.* § 1630.2(j)(1)(ix). Instead, duration is "just one factor to consider" in making this determination. *Matthews*, 613 F. App'x at 167-68. Despite the overall flexibility of the regulations, however, "not every impairment will constitute a disability within the meaning of this section." 29 C.F.R. § 1630(j)(1)(ii).

The complaint alleges that Honauer broke his fibula and tibia bones in his leg, that he underwent surgery on the leg, and that he developed severe blood clots on his return flight to the United States and needed treatment for them. (Compl. ¶¶ 13, 15, 17.) The complaint further alleges that Honauer's broken leg and blood clots "were a physical impairment that substantially limited one or more major life activities," and that defendants were aware of those impairments. (Compl. ¶¶ 34-35; *see also id.* ¶¶ 14, 16-17.) Honauer asserts that he provided NJTC with a doctor's note clearing him to return to work on March 26, 2018. (Compl. ¶ 20.) Aside from these allegations, the complaint is silent as to the impact of Honauer's injury on how his

6

impairments affected his life or how long he was affected by them. *Cf. Matthews*, 613 F. App'x at 167 ("What matters is not the name or diagnosis of the impairment but 'the effect of the impairment on the life of the individual.'" (quoting *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999)). At the pleading stage, however, Honauer need not "go into the particulars about the life activity affected by [his] alleged disability or detail the nature of [his] substantial limitations." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). The complaint's allegations of a broken leg requiring prompt surgery, as well as the existence of blood clots described as "severe" (*see* Compl. ¶¶ 13-17), suffice to survive dismissal given the flexibility and breadth of the standards embodied by the regulations.[5] Honauer will ultimately be required to prove, not merely allege, that he was substantially limited in a major life activity to prevail, *see Fowler*, 578 F.3d at 214, but at this stage the Court declines to dismiss count 1.

Count 2 alleges that NJTC failed to provide reasonable accommodations and to engage in the interactive process regarding Honauer's need for accommodation. The ADA prohibits disability discrimination that takes the form of failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified employee with a disability, unless the covered entity can show that the accommodation would impose undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5)(A); *see also* 29 C.F.R. § 1630.9(a). A reasonable accommodation may include, among other things, modified work schedules or the acquisition or modification of equipment. 29 C.F.R. § 1630.2(o)(2)(ii). Once an employee has

---

[5]  The doctor's note referenced in paragraph 20 of the complaint includes a limitation to sedentary work (Matias Cert. Ex. F), suggesting Honauer may have been substantially limited in the major life activity of working. *See Fowler*, 578 F.3d at 213. As Honauer need not, at this stage, supply particulars about the major life activity or activities he claims were substantially limited, it is unnecessary to reach the issue of whether his pleading meets the "broad class of jobs" standard with respect to the life activity of working. (*Cf.* Defs.' Moving Br. 1, 5-6.)

7

requested a reasonable accommodation, the employer and employee are to engage in an interactive process to reach an appropriate accommodation. *See Taylor*, 184 F.3d at 311; *see also* 29 C.F.R. § 1630.2(o)(3).

NJTC argues that Honauer has not alleged that he ever requested an accommodation. To trigger the employer's obligations pursuant to the interactive process, the employee must give notice that "make[s] clear that the employee wants assistance for his or her disability." *Taylor*, 184 F.3d at 313. The request need not be in writing or use the term "reasonable accommodation"; the key is whether the employee "provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." *Id.* The complaint alleges that Honauer updated Muchmore, NJTC's president, in close to real time regarding his broken leg, surgery, and blood clots. (Compl. ¶¶ 14-17.) The communications from Honauer to Muchmore that are referenced in and relied upon in the complaint and also supplied with Honauer's opposition to the motion to dismiss show that Honauer repeatedly mentioned his limitations and referenced carpooling, staying at his desk, and the need to keep his leg elevated. (*See* Matias Cert. Ex. C-E.) The doctor's note, which Honauer allegedly provided to NJTC (Compl. ¶ 20), restricts him to sedentary work (Matias Cert. Ex. F.) Taking Honauer's allegations as true for purposes of this motion, NJTC "can be fairly said to" have known of Honauer's purported disability and his desire for an accommodation. Thus, the Court rejects NJTC's argument that count 2 must be dismissed because Honauer did not request an accommodation.[6]

---

[6] Defendants also argued for dismissal of count 2 on the basis that Honauer is not disabled. For the reasons set forth earlier, the Court concludes that Honauer sufficiently pleaded the existence of an actual disability to survive dismissal. It is unnecessary to reach whether Honauer has also pleaded a "record of" disability claim in count 2 (Pl.'s Opp. Br. 15-16) because both an

8

### B. FMLA Claim

The complaint asserts that Honauer was entitled to leave under the FMLA in March 2018, and that "defendant" "engaged in prohibited conduct" under the statute by "interfering with, restraining or denying" his FMLA rights, and "foreclosed" those rights, including "the right to go on leave due to his injury and to return to his position." (Compl. ¶¶ 83-85.) Factually, Honauer contends that Muchmore failed to inform Honauer of his rights under the FMLA or to provide him with the necessary paperwork "for him and his doctor to review and complete." (*Id.* ¶ 22.) Defendants seek dismissal of this claim on the grounds that (1) Honauer did not request a leave from NJTC, and (2) has not alleged a "serious health condition."

The FMLA permits eligible employees 12 workweeks of leave during any 12-month period if the employee has a "serious health condition" rendering the employee unable to perform the functions of his or her position. *Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 153 (3d Cir. 2015) (citing 29 U.S.C. § 2612(a)(1)(D)). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition" involving inpatient care in a hospital, hospice, or residential medical care facility or continuing treatment by a healthcare provider. 29 U.S.C. § 2611(11); 29 C.F.R. § 825.113(a). "Inpatient care," in turn, is defined as "an overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity as defined in § 825.113(b),[7] or any subsequent treatment in connection with such inpatient care." 29 C.F.R. § 825.114. Whether a condition involves "continuing treatment" may be assessed a number of different ways, including the duration of the incapacity

---

actual disability and a record of a disability require reasonable accommodations. *See* 29 C.F.R. § 1630.9(e).

[7] "Incapacity" means "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b).

and the number of treatments within a specified period or whether treatment by a health care provider resulted in a supervised regiment of continuing treatment. 29 C.F.R. § 825.115(a).

Employers are prohibited from interfering with, restraining, and denying the exercise or attempted exercise of employees' rights under the FMLA, and from discrimination for opposing unlawful practices under the statute. 29 U.S.C. § 2615(a). Employers violating this provision can be sued by employees for damages and equitable relief. *See* 29 U.S.C. § 2617. An employee alleging interference must show that (1) he was entitled to benefits under the FMLA and (2) that his employer illegitimately prevented him from getting those benefits. *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007).

With respect to whether Honauer has sufficiently alleged his entitlement to FMLA leave in the first instance; that is, whether he has alleged a "serious health condition," the Court concludes that the complaint falls short in this respect. Honauer's opposition brief refers to an overnight hospital stay, prescriptions he received, physical and occupational therapy regimens and visits, visits to doctors, and tests he had. (Pl.'s Opp. Br. 19-20.) But these statements are outside scope of the complaint and are not supported by any references whatsoever, much less by references to materials the Court may consider in evaluating a motion under Rule 12(b)(6).

Moreover, although Honauer has challenged the failure to inform him of his rights under the statute, he must first have provided his employer with a qualifying reason for the leave. 29 C.F.R. § 825.301(b). In a situation involving, as here, an unforeseeable need for leave, an employee must give notice to the employer "as soon as practicable under the facts and circumstances" and include "sufficient information for [the] employer to reasonably determine whether the FMLA may apply to the leave request." *Id.* § 825.303(a)-(b). Similarly, the Third Circuit has said that a request is sufficient when it reasonably apprises the employer that the

employee is seeking leave for a serious health condition. *Sarnowski*, 510 F.3d at 402. While Honauer's brief focuses on the promptness of his communications with Muchmore and the company's failure to provide him with information on the FMLA, he does not explain how the complaint allegations amount to a sufficient request for leave.[8] Accordingly, count 6 will be dismissed; however, Honauer may amend his complaint within 21 days to address the deficiencies in this claim.

### C. NJLAD Claims

Defendants have sought dismissal of Honauer's NJLAD claims on the ground that upon dismissal of all of the federal claims, the Court should decline to exercise its supplemental jurisdiction over the state law claims. The Court's ruling that, at minimum, the ADA claims will be allowed to proceed vitiates the premise of this argument. Therefore, the Court will not dismiss the NJLAD claims at this time.

### D. Muchmore as a Defendant

Although neither side addresses the issue, the Court observes that the federal claims appear to be pleaded only against NJTC. Nonetheless, the motion to dismiss was filed on behalf of both defendants. The amended complaint shall make clear which claims, if any, Honauer asserts against Muchmore. *Cf., e.g.*, *Williams v. Pa. Human Rels. Comm'n,* 870 F.3d 294, 299 n.27 (3d Cir. 2017) (no individual liability under ADA).

---

[8] Again here, Honauer references information outside the pleadings, namely that he had offered to or did work from home the week after his injury. (Pl.'s Opp. Br. 17.)

## V. Conclusion

The motion to dismiss is granted as to the FMLA claim (count 6) and is otherwise denied. If he chooses, Honauer may file an amended complaint within 21 days addressing the deficiencies in the FMLA claim and making clear which claims, if any, are asserted against the individual defendant. An appropriate order will issue.

Date: September 10, 2020

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.